UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DALE G. CROSS,               )
                                  )
      Petitioner,         )
                                  )
       v.              )          No. 4:16-CV-01800-SPM
                                  )
JASON LEWIS,             )
                                  )
      Respondent.     )

## MEMORANDUM AND ORDER

This matter is before the undersigned on the petition of Missouri state prisoner Dale G.

Cross ("Petitioner") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). The parties

have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to

28 U.S.C. § 636(c)(1). (Doc. 6). For the following reasons, the petition will be denied.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

In its order affirming Petitioner's convictions on direct appeal, the Missouri Court of

Appeals described the underlying facts as follows:

> Annette Cross-Sanford ("Cross-Sanford") is Defendant's sister. Cross-Sanford had two children with Andrew Day ("Victim"). Cross-Sanford lived in Lawrence, Kansas; Defendant lived in Hannibal, Missouri; and Victim lived in Mountain View, Missouri. During August 2009, Cross-Sanford's daughter reported to Defendant that her "private" hurt after she returned from visitation with Victim. On September 14, 2009, Defendant's mother, Joann Cross ("Cross"), purchased a handgun at a pawn shop. Cross-Sanford drove with her children to Hannibal. The children remained with Cross at Defendant's home. Cross-Sanford and Defendant put on black hooded sweatshirts and drove to Victim's home.
>
> At Victim's home, Defendant left the gun on the roof of the car while Defendant and Cross-Sanford spoke with Victim. A confrontation ensued with Victim shoving Defendant. Defendant went back to the car to retrieve the gun. Defendant then shot Victim and lit the couch on fire.
>
> One of Victim's neighbors drove by Victim's home at about 5:30 a.m. on September 15, 2009, noticed that Victim's home was on fire, and called 911. After

the fire was extinguished, Victim's body was found in the remains of the home. Victim had been shot four times, twice in the head and twice in the chest.

Defendant was subsequently arrested. After being advised of his Miranda rights, Defendant admitted shooting Victim and setting the home on fire.

Defendant was charged with first-degree murder, first-degree arson, and armed criminal action. The jury found Defendant guilty of second-degree murder, second-degree arson, and armed criminal action. In a subsequent proceeding, the jury recommended sentences of 25 years for second-degree murder, 7 years for second-degree arson, and 25 years for second-degree, 7 years for second-degree arson, and 25 years for armed criminal action. The judge sentenced Defendant in accordance with the jury's recommendation, and this appeal followed.

Resp't Ex. E, at 2-3 (footnote omitted). Additional relevant facts will be discussed below as needed to address Petitioner's claims.

In his direct appeal, Petitioner asserted two points: (1) that the trial court abused its discretion in excluding as hearsay the testimony of John Matney about what Danney Snethern told him; and (2) that the trial court erred in denying Petitioner's motion for a new trial due to discovery violations by the prosecutor—specifically, the prosecutor's failure to disclose that he had in his possession tapes of appellant's jail phone calls. Resp't Ex. C, at 15-17. The Missouri Court of Appeals reviewed both claims and found them to be without merit. Resp't Ex. E. In his amended motion for post-conviction relief, filed through counsel, Petitioner asserted a single claim: that Petitioner's trial counsel was ineffective in that trial counsel failed to obtain discovery of recordings of jail calls. Resp't Ex. F, at 22-32. The motion court denied the claim on the merits. Resp't Ex. F, at 73-83. On appeal from the denial of his motion, the Missouri Court of Appeals affirmed the motion court's denial of this claim. Resp't Ex. I, at 6-7.

In his Petition, Petitioner asserts seven claims: (1) that the trial court erred by excluding the testimony of John Matney about what Danny Snethern told him, because those statements were admissible under the residual hearsay exception; (2) that the trial court erred in overruling Petitioner's motion for a new trial with respect to the state's failure to disclose recordings of

telephone calls that Petitioner made while he was incarcerated an awaiting trial; (3) that Petitioner's trial counsel was ineffective based on trial counsel's failure to obtain discovery related to jail phone calls between Petitioner and others prior to trial; (4) that Petitioner's trial counsel was ineffective based on trial counsel's failure to make a challenge that as a result of the unconstitutional holding in *Missouri v. Hunter*, 459 U.S. 359 (1983), and the unconstitutional Missouri statute section 571.015, that Petitioner has been placed in double jeopardy by being convicted and sentenced for both Count 1 and Count 3;[1] (5) that Petitioner's direct appeal counsel was ineffective based on counsel's failure to raise on appeal the issue that the trial court erred by overruling Petitioner's motion to suppress statements taken in violation of Petitioner's right to counsel, right against self-incrimination, and right to due process; (6) that Petitioner's direct appeal counsel was ineffective based on the failure to raise the issue that the trial court erred in overruling Petitioner's motion to stop introduction of State's Exhibit 68, a close-up of a burned face already depicted in other photographs; and (7) that Petitioner's direct appeal counsel was ineffective based on the failure to raise the issue that the trial court erred by denying Petitioner's jury instruction 6(A) with the parenthetical.

---

[1] To the extent that Ground Four might be read as an ineffective assistance of post-conviction counsel claim, such a claim is not be cognizable in a federal habeas petition. *See* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."). Like Respondent, the Court gives Petitioner the benefit of the doubt and construes Ground Four as a claim of ineffective assistance of trial counsel, the default of which should be excused by the ineffective assistance of Petitioner's post-conviction counsel pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2012).

## II.  LEGAL STANDARDS

### A.  Standard for Reviewing Claims on the Merits

Federal habeas review exists only as a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (quotation marks omitted). Accordingly, "federal habeas courts are constrained by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) to exercise only a limited and deferential review of underlying state court decisions." *White v. Kelley*, 824 F.3d 753, 756 (8th Cir. 2016) (quoting *Sera v. Norris*, 400 F.3d 538, 542 (8th Cir. 2005)). Under AEDPA, a federal court may not grant habeas relief to a state prisoner with respect to any claim that was adjudicated on the merits in the state court proceedings unless the state court's adjudication of a claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is "contrary to" clearly established Supreme Court precedents "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court decision involves an "unreasonable application" of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams*, 529 U.S. at 407-08; *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "Finally, a state court decision involves an unreasonable determination

of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004) (citations and internal quotation marks omitted); *see also Rice v. Collins*, 546 U.S. 333, 338-39 (2006) (noting that state court factual findings are presumed correct unless the habeas petitioner rebuts them through clear and convincing evidence) (citing 28 U.S.C. § 2254(e)(1)).

### B. Procedural Default

To preserve a claim for federal habeas review, "a state habeas petitioner must present that claim to the state court and allow that court an opportunity to address his claim." *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). "Where a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted." *Id.* The federal habeas court will consider a procedurally defaulted claim "only where the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Id.* (citing *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992)). To demonstrate cause, a petitioner must show that "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, a petitioner must demonstrate that the claimed errors "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *accord Ivy v. Caspari*, 173 F.3d 1136, 1141 (8th Cir. 1999). Lastly, in order to assert the fundamental miscarriage of justice exception, a petitioner must "present new evidence that affirmatively demonstrates that he is innocent of the crime for

which he was convicted." *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) (quoting *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)).

III.   DISCUSSION

### A.  Ground One: Trial Court Error—Exclusion of Hearsay Testimony

In Ground One, Petitioner argues that the trial court abused its discretion in excluding the testimony of fire investigator John Matney about what Danny Snethern told him. Prior to trial, Petitioner filed a "Motion to Permit Introduction of Eyewitness Statement by Deceased Eyewitness." Resp't Ex. B, at 67-68. In that motion, Petitioner stated that Mr. Matney, the fire investigator, interviewed a man named Danny Snethern on the day of the fire. *Id.* at 67. Mr. Snethern told Mr. Matney that on the morning of the fire, he saw a woman run from the burning house to the yellow car and that when fire trucks started to arrive, the yellow car left at a high rate of speed, with a man driving. *Id.* Mr. Snethern could not identify either individual. *Id.* Mr. Snethern died before trial. *Id.* Petitioner argued that the evidence should be admitted under either the residual hearsay exception or on due process and Sixth Amendment grounds. *Id.* The trial court ruled against Petitioner, Petitioner renewed the argument at trial, and the Court again ruled against Petitioner. Resp't Ex. A, at 579-80. In his direct appeal, Petitioner argued that the trial court abused its discretion in excluding the evidence, because the exclusion violated Petitioner's right to present a defense, to due process, and  to a fair trial, under the Sixth and Fourteenth Amendments to the United States Constitution, as well as the Missouri Constitution, in that the testimony was admissible under the residual exception to hearsay, and its exclusion prejudiced Petitioner because Mr. Snethern's reliable statement to a fire inspector inculpated Petitioner's sister in the homicide and supported Petitioner's defense. Resp't Ex. C, at 18-24. Petitioner also cited *Washington v. Texas*, 388 U.S. 14, 23 (1967) for the proposition that ""[t]he Framers of the Constitution did

not intend to commit the futile act of giving to a defendant the right to secure the attendance of witnesses whose testimony he had no right to use," and *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973), for the proposition that the "hearsay rule may not be applied mechanistically to defeat the ends of justice." *Id.* at 20-21.

In addressing this claim on appeal, the Missouri Court of Appeals first noted that a trial court abuses its discretion when its ruling on the admission or exclusion of evidence "is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." Resp't Ex. E, at 4 (quoting *State v. White*, 329 S.W.3d 710, 712 (Mo. Ct. App. 2010)). It further stated, "We will not reverse a judgment because of error in the admission or exclusion of evidence unless the error was so prejudicial that it deprived the defendant of a fair trial." *Id.* (quoting *State v. Collis*, 139 S.W.3d 638, 641 (Mo. App. S.D. 2004)). The court then stated:

> [W]e need not reach the issue of whether the statements were admissible because Defendant suffered no prejudice as a result of their exclusion. "Although there is a rebuttable presumption that excluded admissible evidence is prejudicial, this presumption is rebutted when the error is harmless beyond a reasonable doubt." [*State v. Norman*, 145 S.W.3d 912, 919-20 (Mo. App. S.D. 2004)]. In determining whether the exclusion of evidence was harmless beyond a reasonable doubt, "we take special note of all the evidence presented, the nature of the charge and the role the excluded evidence would have played in the defense's theory. *Id.* at 920. Where the excluded evidence would have been cumulative of evidence already before the jury, the exclusion of the evidence is harmless beyond a reasonable doubt. *Id. See also State v. Robinson*, 108 S.W.3d 689, 696 (Mo. App. W.D. 2003); *Collis*, 139 S.W.3d at 641.
>
> In the present case, Snethern's statements were cumulative of evidence admitted at trial. The jury heard a recording of the interview between the police and Defendant. During that interview, the officers told Defendant a witness had reported seeing Cross-Sanford run from the back of Victim's home on the morning of the crimes. This evidence was substantially the same as Snethern's statements to Fire Marshal about seeing a female run from the back of Victim's home on the morning of the crimes. Hence, Fire Marshal's testimony would have been cumulative and Defendant was not prejudiced by the trial court's decision to exclude that testimony.
>
> Defendant's first point is denied.

Resp't Ex. E, at 5. Although the Missouri Court of Appeals denied Ground One in its entirety, it relied solely on state law and never expressly addressed the federal constitutional aspects of the claim.

Respondent argues that Ground One is not cognizable because federal habeas courts are limited to deciding whether a state conviction violated the federal Constitution or laws and this claim is not cognizable under the court's limited jurisdiction. To the extent that Petitioner's claim is that the state court erred, as a matter of Missouri law, in excluding this evidence, the Court agrees with Respondent. It is well-established that "federal habeas corpus relief does not lie for errors of state law" and that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (internal quotation marks omitted). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. *Accord Wilson v. Corcoran*, 562 U.S. 1, 5 (2010). *See also Lee v. Norris*, 354 F.3d 846, 847 (8th Cir. 2004) ("[A] mere violation of state law . . . is not cognizable in federal habeas."). However, it is clear both from Petitioner's Traverse and Petitioner's framing of the claim in his direct appeal that Petitioner has not limited his argument to a claim that the state trial court erred under state law; he is also claiming that the trial court's decision not to admit this evidence violated his rights under the United States Constitution.

The Court first considers the standard of review that applies to this claim. As discussed above, if the state court adjudicated the claim on the merits, then its denial is entitled to deference under AEDPA. "When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted." *Johnson v. Williams*, 568 U.S. 289,

301 (2013). "When the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court, § 2254(d) entitles the prisoner to an unencumbered opportunity to make his case before a federal judge." *Id.* at 303.

Here, in light of the fact that the state court relied entirely on state law and did not mention any federal cases in its analysis, the Court will give Petitioner the benefit of the doubt and assume, *arguendo*, that the *Johnson* presumption has been rebutted and that the state court did not adjudicate the claim on the merits. Even applying *de novo* review, however, the Court finds that Petitioner has not shown that the exclusion of this hearsay evidence violated his right to a fair trial and entitles him to habeas relief.

In *Holmes v. South Carolina*, the United States Supreme Court summarized the general principles implicated by Petitioner's claim that the exclusion of evidence under state evidentiary rules violated his constitutional rights:

> "[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." *United States v. Scheffer*, 523 U.S. 303, 308 (1998); *see also Crane v. Kentucky,* 476 U.S. 683, 689-690 (1986); *Marshall v. Lonberger*, 459 U.S. 422, 438, n. 6 (1983); *Chambers v. Mississippi*, 410 U.S. 284, 302-303 (1973); *Spencer v. Texas*, 385 U.S. 554, 564, (1967). This latitude, however, has limits. "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane*, *supra*, at 690, (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984); citations omitted). This right is abridged by evidence rules that "infring[e] upon a weighty interest of the accused" and are "'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *Scheffer, supra*, at 308 (quoting *Rock v. Arkansas*, 483 U.S. 44, 58, 56 (1987)).

*Holmes v. South Carolina*, 547 U.S. 319, 324-25 (2006).

The Supreme Court has recognized that under some circumstances, the exclusion of hearsay statements favorable to a defendant may violate the defendant's constitutional rights. In *Chambers v. Mississippi*, Chambers was accused of shooting a police officer. *Id* at 285-86. Part of

his defense was that another individual, McDonald, had actually committed the crime. *Id.* at 289.

At trial, Chambers was permitted to call McDonald for purposes of introducing evidence of a

sworn confession McDonald had previously made to Chambers's attorneys; however, after

McDonald testified that he had later repudiated the confession, Chambers was not permitted to

examine McDonald as an adverse witness because of a Mississippi rule prohibiting a party from

impeaching its own witness. *Id.* at 291, 294-97. Chambers also attempted to introduce the

testimony of three witnesses to whom McDonald had admitted that he had shot the officer. *Id.* at

292. However, the trial court excluded this testimony as hearsay, because Mississippi's hearsay

rules did not provide an exception for statements against penal interest. *Id.* at 291-93, 299.

In considering whether the exclusion of this hearsay testimony violated Chambers's due

process rights, the Court first recognized the general purpose of hearsay rules:

> The hearsay rule, which has long been recognized and respected by virtually every
> State, is based on experience and grounded in the notion that untrustworthy
> evidence should not be presented to the triers of fact. Out-of-court statements are
> traditionally excluded because they lack the conventional indicia of reliability: they
> are usually not made under oath or other circumstances that impress the speaker
> with the solemnity of his statements; the declarant's word is not subject to cross-
> examination; and he is not available in order that his demeanor and credibility may
> be assessed by the jury.

*Id.* at 298. The Court noted that several exceptions have developed to allow admission of hearsay

statements made under circumstances that tend to assure reliability, and that among the most

prevalent "is the one applicable to declarations against interest—an exception founded on the

assumption that a person is unlikely to fabricate a statement against his own interest at the time it

was made." *Id.* at 299. The Court found that "[t]he hearsay statements involved in this case were

originally made and subsequently offered at trial under circumstances that provided considerable

assurance of their credibility." *Id.* at 300. First, it noted that "each of McDonald's confessions was

made spontaneously to a close acquaintance shortly after the murder had occurred." *Id.* Second, it

noted that each statement was "corroborated by some other evidence in the case." *Id.* Third, it noted that each confession was "self-incriminatory and unquestionably against interest." *Id.* at 301. Finally, the Court noted that "if there was any question about the truthfulness of the extrajudicial statements, McDonald was present in the courtroom and under oath," so that he could have been "cross-examined by the State, and his demeanor and responses weighed by the jury." *Id.* The Court also found that the testimony at issue was "critical to Chambers' defense." *Id.* at 302. It concluded that "the exclusion of this critical evidence, coupled with the State's refusal to permit Chambers to cross-examine McDonald, denied him a trial in accord with traditional and fundamental standards of due process." *Id.* at 302. The Court remanded the case for further proceedings. Id. at 303.

Courts applying *Chambers* have considered several factors in determining whether the exclusion of hearsay evidence constitutes a constitutional violation, including whether the statement at issue was a statement against the declarant's interest, whether the declarant was available for cross-examination, whether the statement was spontaneously made, whether the statement was made to a close acquaintance, whether the statement was made close in time to the crime, whether the statement is corroborated by other evidence, and how critical the statements were to the defense. *See Guinn v. Kemna,* 489 F.3d 351, 356-57 (8th Cir. 2007) (state court did not unreasonably apply *Chambers* in finding no error in exclusion of hearsay confessions by a third party where none of the statements were made close in time to the assault, none of the statements were made to longtime or close friends, the statements were not spontaneous, there was little corroboration of the statements, and the declarant was unavailable to be cross-examined under oath); *Skillicorn v. Luebbers,* 475 F.3d 965, 970-72 (8th Cir. 2007) (state court did not unreasonably apply *Chambers* in finding no error in exclusion of hearsay statement that lacked

considerable assurances of reliability because it was not unquestionably against the declarant's penal interest, was not corroborated, and was made to an FBI agent several weeks after the murder); *Taylor v. Steele*, 372 F. Supp. 3d 800, 826-31 (E.D. Mo. 2019) (state court reasonably found no *Chambers* violation where the statements were not confessions to the crime by a third party, the statements at issue were not corroborated, the statements were not made under circumstances that would point to heightened truthfulness, and the declarants were not available for cross-examination); *McLaughlin v. Steele*, 173 F. Supp. 3d 855, 898 (E.D. Mo. 2016) (state court reasonably found no *Chambers* violation where the excluded hearsay statements were made six months after the murder and where the statements, if believed, would not have exonerated Petitioner but would only have implicated another individual in the crime); *Davis v. Grandlienard*, No. CIV. 13-2449 DSD/JJK, 2015 WL 1522186, at *3-*4 (D. Minn. Mar. 31, 2015) (no *Chambers* violation where although witnesses had no motivation to lie and were not pressured into speaking, none of the indicia of reliability set forth in *Chambers* were present and the statements were of minor importance in light of the evidence offered by the prosecution), *aff'd*, 828 F.3d 658 (8th Cir. 2016).

Here, the Court finds that Petitioner has not shown that Mr. Snethern's statements had sufficient indicia of reliability that their exclusion amounted to a violation of Petitioner's due process rights. Three key indicia of reliability discussed in *Chambers* and most of the above cases are absent here: Mr. Snethern's statement was not against his penal interest, Mr. Snethern's statement was not corroborated by other evidence, and Mr. Snethern was not available to testify at trial so that he could be cross-examined and the jury could observe his demeanor and credibility. Although it appears likely that Mr. Snethern had no motive to lie and he made the statement close in time to the incident, the Court does not find those factors sufficient to bring this state evidentiary

ruling to the level of a constitutional violation. The Court also notes that even if this statement had been introduced and believed, it would not have exonerated Petitioner; the fact that Petitioner's sister ran from the house to a car where Petitioner was waiting is not inconsistent with the prosecution's theory that Petitioner was in the house with his sister at one point during the crime before they drove away.

In the alternative, even assuming, *arguendo*, that the trial court violated *Chambers* when it excluded this hearsay testimony, the Court finds that federal habeas relief cannot be granted, because the error was harmless under the applicable standard. The Supreme Court has held that federal habeas relief based on a *Chambers* violation is available only the where the claimed error had a "substantial and injurious" effect on the jury's verdict. *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (citing *Brecht v. Abrahamson*, 507 U.S. 619 (1993)). This standard provides a "less onerous" test for finding harmless error during collateral review than the "harmless beyond a reasonable doubt" standard that the court applies on direct review. *Id.* at 117-18. "A 'substantial and injurious effect' occurs when a court finds itself in 'grave doubt' about the effect of the error on the jury's verdict. *Christenson v. Ault*, 598 F.3d 990, 994-95 (8th Cir. 2010) (quoting *Chang v. Minnesota*, 531 F.3d 828, 832 (8th Cir. 2008)) "'[G]rave doubt'" exists when the issue of harmlessness is 'so evenly balanced that [the court] feels [itself] in virtual equipoise as to the harmlessness of the error.'" *Id.*

Here, the Missouri Court of Appeals found any error in the exclusion of this evidence to be "harmless beyond a reasonable doubt," because the substance of the excluded evidence was introduced in another form and thus the excluded evidence would have been cumulative. The Missouri Court of Appeals noted that the jury heard a recording of the interview between the police

and Defendant, during which officers told Defendant that a witness had reported seeing Petitioner's sister run from the back of the victim's home on the morning of the crimes.

Applying the less onerous "substantial and injurious" test for harmless error, as this Court must on federal habeas review, this Court also finds the error harmless. In light of this evidence discussed by the Missouri Court of Appeals, the Court agrees that the statements of Mr. Snethern to the fire investigator would have been cumulative. The Court does not have "grave doubt" about the effect of the error on the jury's verdict, particularly in light of all of the other evidence presented in the case, including the evidence that Petitioner admitted to shooting the victim and setting the house on fire, the evidence that Petitioner led the police to the pond where he threw the gun, and the evidence that Petitioner told his brother that Petitioner and his sister shot the victim and set his house on fire. (Tr. 337-64, 471). Because Petitioner has not shown that any error in the exclusion of this evidence had a "substantial and injurious effect" on the jury's verdict, this claim will be denied.

### B. Ground Two: Trial Court Error—Prosecution's Nondisclosure of Jail Phone Calls

In Claim Two, Petitioner argues that the trial court erred in denying defense counsel's motion for new trial based on the State having violated Missouri Supreme Court Rule 25.03 by failing to disclose recordings of telephone calls that Petitioner made while he was incarcerated. The calls included discussions between Petitioner and his brother and between Petitioner and his father; on the recordings, Petitioner's father was telling him not to take the plea offer, was telling him his sister was going to testify, and was telling him not to trust his public defender, Resp't Ex. F, at 41-42, 51, 53.

In addressing this claim in Petitioner's direct appeal, the Missouri Court of Appeals noted that "[a]lthough the obligations imposed by Rule 25.03 overlap with the obligations created by

*Brady v. Maryland*, 373 U.S. 83 (1963), Rule 25.03 extends to both favorable and unfavorable evidence." Resp't Ex. E, at 8. The Missouri Supreme Court then stated, "Assuming, without deciding, that the recordings should have been disclosed to the defense, Defendant is not entitled to relief because the nondisclosure did not result in fundamental unfairness." *Id.* at 9. The court reasoned that the State had not used the material in any way and that there was strong evidence of guilt, including Defendant's admissions. The Court also noted that the purpose of Rule 25.03 "is to permit a party to prepare for trial, to eliminate surprise, and to afford the accused information with which to formulate a defense and meet opposing evidence." *Id.* at 9 n.4 (quoting *State v. Goodwin*, 43 S.W.3d 805, 813 (Mo. banc 2013). It stated that there is substantial authority that the prosecutor cannot be cited for a discovery violation where the defendant had knowledge of the existence of the item the State failed to disclose. *Id.* It also noted, "At the beginning of each phone call, a recorded voice warned Defendant were subject to recording and monitoring. In fact, in at least one of the calls, Defendant reminded his family members not to discuss details of the crime because the calls were being recorded." *Id.* The court denied the claim.

In his response, Respondent argues that Ground Two is not cognizable on habeas review because it is based only on state law. To the extent that Petitioner's claim is based purely on an assertion that the State erred in its application of state law, the Court agrees with Respondent that this claim is not cognizable. As discussed above, federal habeas relief is not available for errors of state law. However, in his Traverse, Petitioner argues that it is clear that he is seeking relief under both Mo. Sup. Ct. R. 25.03 and *Brady v. Maryland*, 373 U.S. 83 (1963) and that his rights under the due process clause were violated.[2]

---

[2] Petitioner also cites *Hicks v. Oklahoma*, 447 U.S. 343 (1980), in arguing that his due process rights were violated by the nondisclosure of the evidence. In *Hicks*, the Supreme Court held that where a defendant had a right, under state law, to have a jury fix his sentence, the state could not

To the extent that Petitioner's claim is based on a violation of *Brady v. Maryland*, it appears to have been procedurally defaulted, because Petitioner did not argue in his state court proceedings that there had been a *Brady v. Maryland* violation. *See* Resp't Ex. C. However, even assuming, *arguendo*, that such a claim was not procedurally defaulted or that Petitioner could overcome the procedural default, the Court finds the claim to be without merit. In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. The Court later held that the obligation to disclose exists even where there been no request by the accused and that the duty encompasses impeachment evidence as well as exculpatory evidence. *See Strickler v. Greene*, 527 U.S. 263, 280 (1999) (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985), and *United States v. Agurs*, 427 U.S. 97, 107 (1976)). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). To show prejudice, the Petitioner must show that 'there is a reasonable probability' that the result of the trial would have been different if the suppressed documents had been disclosed to the defense." *Id.* at 289.

Neither the first nor the third of the three components of a *Brady* violation are present here. The first component is not satisfied, because the recordings at issue contained no material that would have been favorable to Petitioner in any way or useful for impeaching any witness. The

---

arbitrarily deprive him of that right without violating the due process clause. *Id.* at 346. Because the *Brady* line of cases governs the circumstances under which nondisclosure of evidence constitutes a due process violation, it does not appear to the Court that *Hicks* has any relevance here.

recordings simply show Petitioner's father and brother giving him bad advice—advising him not to take a plea offer, advising him incorrectly that his sister would testify, and advising him not to trust his public defenders.

The third component is also not satisfied, because there is no reasonable probability that the result of the trial (or of Petitioner's decision to accept the plea offer) would have been different had the defense had access to the recordings. Although Petitioner's trial counsel testified that having access to the recordings would have helped her talk to Petitioner more strongly about accepting the plea offer, trial counsel was aware even without the tapes that Petitioner was resistant to the plea offer in part because he was convinced that his sister would testify. Resp't Ex. F, at 50-51. Moreover, even without the recordings, trial counsel advised Petitioner that his sister likely would not testify and advised Petitioner to take the plea offer. Resp't Ex. F, 50-52. Additionally, even though Petitioner's counsel did not have these recordings, Petitioner himself knew the advice his family members were giving him on the recordings and was fully capable of discussing that advice with his attorneys. There is no reasonable probability that defense counsel having access to the recordings would have affected Petitioner's decision regarding the plea offer. There is also no reasonable probability that the disclosure of the recordings would have changed the outcome at trial. Petitioner's trial counsel testified that she had two possible witnesses she decided not to call at trial—Petitioner's sister and a girlfriend—because she did not feel adequately prepared to cross-examine Petitioner's sister if she did testify, and because she anticipated that Petitioner's sister would take the fifth. Resp't Ex. F, at 51. Trial counsel thought the tapes would have given her "some ammunition" had Petitioner's sister not taken the Fifth, because Ms. Anthony believed Petitioner's sister was manipulating Petitioner by sending messages to Petitioner through his father. Resp't Ex. F, at 51. However, trial counsel did not explain what ammunition the tapes

would have given her in cross-examining Petitioner's sister (assuming she testified, which trial counsel thought was unlikely), nor is it apparent to the Court, given that Petitioner's sister apparently did not speak on the recordings. *See* Resp't Ex. F, at 53. Regardless, even if Petitioner's sister had testified and Petitioner's trial counsel had been able to cross-examine her using recordings of Petitioner's father and/or brother indicating that she had told Petitioner she would testify, the Court finds no reasonable probability that this would have affected the outcome of the trial, in light of the strong evidence against Petitioner, including his own admissions that he committed the crime.

For all of the above reasons, Petitioner has not established a *Brady* violation. Ground Two is denied.

### C.  Grounds Three through Seven: Ineffective Assistance of Counsel Claims

In Grounds Three through Seven, Petitioner asserts claims of ineffective assistance of trial and appellate counsel. The Court will address each claim below.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To show ineffective assistance of counsel, a petitioner must show both that "[his] counsel's performance was deficient" and that "the deficient performance prejudiced [his] defense." *Strickland*, 466 U.S. at 687; *see also Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014). To show deficient performance, a petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential," and Petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy." *Id.* at

689 (citation and internal quotation marks omitted). To show prejudice, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

### i. Ground Three: Ineffective Assistance of Trial Counsel Claim Addressed on the Merits by the State Court—Failure to Obtain Jail Phone Call Recordings

In Ground Three, Petitioner asserts ineffective assistance of trial counsel based on trial counsel's failure to obtain discovery related to the jail phone calls between Petitioner and other individuals prior to trial. Petitioner argues that this discovery would have changed Petitioner's counsel's trial strategy and would have changed the outcome of trial, or in the alternative would have led Petitioner to accept a plea deal. Petitioner raised this claim in his amended motion for postconviction relief, Resp't Ex. F, at 20-37, and in his appeal from the denial of that motion, Resp't Ex. G. The Missouri Court of Appeals denied the claim on the merits. Resp't Ex. I.

In addressing this claim, the Missouri Court of Appeals correctly recognized that the applicable standard was provided by *Strickland*'s two-prong test. Resp't Ex. I, at 7. The court stated:

> Cross' point argues that, "despite suspicions" about how the State knew certain information, trial counsel provided ineffective assistance by failing "to obtain and listen to the jail calls," and had counsel done so, could have addressed "the misinformation [Cross] was being given by his father including that his sister would testify on his behalf at trial [and therefore,] there is a reasonable probability" that Cross would have accepted the plea offer of 30 years. We find no merit in this argument. For the following reasons, we conclude Cross failed to show that his counsel's representation fell below an objective standard of reasonableness.
>
> First, counsel did not know the recorded jail calls existed. It is not ineffective assistance of counsel to fail to obtain evidence that counsel was never told existed. *See State v. Howard*, 896 S.W.2d 471, 490 (Mo. App. 1995); *see also State v. Gilpin*, 954 S.W.2d 570, 577-78 (Mo. App. 1997) (failure to call a witness that counsel did not know existed is not ineffective assistance of counsel); *State v. Duckett*, 849 S.W.2d 300, 306 (Mo. App. 1993) (same holding). Second, Anthony's

decision not to typically request copies of recorded jail calls was, as the motion court found, "a reasonable strategic decision" and as such is "virtually unchallengeable" and rarely furnishes a ground for finding ineffective assistance of counsel. *Wagoner v. State*, 240 S.W.3d 159, 164 (Mo. App. 2007). Moreover, Anthony did provide effective assistance by (1) advising Cross to take the plea offer; (2) explaining that Sister would likely not testify; and (3) investigating the source of the prosecutor's information, which contrary to Cross' argument, shows Anthony did act on her suspicions. *See Wrice*, 485 S.W.3d at 385 (not ineffective assistance when counsel's performance is not deficient). As the motion court ultimately found, Cross is entitled "to competent advice from counsel; he received such advice. The constitution does not guarantee a criminal defendant competent advice from his family." Point denied.

Resp't Ex. I, at 7-8. The Missouri Court of Appeals did not address the second prong of *Strickland*.

When an ineffective assistance claim has been addressed by the state court, this Court must bear in mind that "[t]aken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 201 (2011)). In the context of a habeas claim, it is not sufficient for a petitioner to "show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance," *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). "Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699.

The Missouri Court of Appeals' application of *Strickland* was not objectively unreasonable, and it has a great deal of factual support in the record. Both of Petitioner's attorneys testified that they did not know about the existence of the recordings until after the guilt phase of the trial had ended. Resp't Ex. F, at 41, 52. Although comments made by the prosecutor had earlier led Ms. Anthony to have suspicions about how the prosecutor knew certain information, she reasonably acted on those suspicions by asking the prosecutor about the information, and he misled her by stating that his comments were based on a "hunch" or that he had overheard the matters in question from people other than Petitioner. Resp't Ex. F, at 51. She also testified about the potential

strategic risk of requesting her client's jail calls, stating, "I don't typically get my own client's jail calls because I might be exposing something to the State that he doesn't already have because he would get them. I mean to get them to me, he would get them. So that's not something I normally do." *Id.* at 52. She testified that if there is something useful, the state will object that it is self-serving and it would be excluded anyway, whereas something that could harm her client might be used. *Id.* at 53.

In light of the above evidence, it is clear that Petitioner's trial counsel's conduct with respect to these tapes "falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy." *See Strickland*, 466 U.S. at 689. The Missouri Court of Appeals' adjudication of this claim was reasonable and consistent with *Strickland*.

Moreover, as discussed above with respect to Ground Two, the Court finds that Petitioner cannot show prejudice from the failure to obtain the recordings. Thus, even assuming, *arguendo*, that Petitioner could establish the first prong of *Strickland*, he cannot establish the second prong.

For all of the above reasons, Ground Three is denied.

## ii. Ground Four: Procedurally Defaulted Claim of Ineffective Assistance of Trial Counsel—Failure to Challenge *Missouri v. Hunter*, 459 U.S. 539 (1983) as Unconstitutional

In Ground Four, Petitioner asserts ineffective assistance of trial counsel based on trial counsel's failure to make a challenge that, as a result of the unconstitutional holding in *Missouri v. Hunter*, 459 U.S. 539 (1983), and the unconstitutional Missouri statute section 571.015, Petitioner has been placed in double jeopardy by being convicted and sentenced for both Count 1 and Count 3. As Respondent argues, and as Petitioner acknowledges, these claims are procedurally defaulted, because Petitioner failed to raise them in state court. Pet'n, Doc. 1, at 6; Resp., Doc. 15, at 9-17. Under Missouri law, claims of ineffective assistance of counsel must be raised in a motion

for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15. *See* Mo. Sup. Ct. Rule 29.15(a). Petitioner did not raise this claim of ineffective assistance of direct appeal counsel in his amended motion for post-conviction relief. Resp't Ex. F, at 20-37. Thus, this claim is procedurally defaulted. *See Interiano v. Dormire*, 471 F.3d 854, 856 (8th Cir. 2006). The Court cannot reach the merits of this claim unless Petitioner can show "either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Moore-El*, 446 F.3d at 896.

In *Martinez v. Ryan*, the Supreme Court held, "Ineffective assistance of counsel at initial-review collateral proceedings may establish cause for a petitioner's procedural default of a claim of ineffective assistance at trial." 566 U.S. 1, 9 (2012). To overcome his procedural default under *Martinez*, Petitioner must show (1) that post-conviction counsel was "ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984)," and (2) "that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* at 13. The second prong is evaluated by determining whether Petitioner has made a substantial case of ineffective assistance of trial counsel under the *Strickland v. Washington* standards. *See Dansby v. Hobbs*, 766 F.3d 809, 834-36 (8th Cir. 2014). As discussed above, to show ineffective assistance of counsel under *Strickland*, Petitioner must show that (1) "[his] counsel's performance was deficient," and (2) "the deficient performance prejudiced [his] defense." 466 U.S. at 687.

Respondent argues that this claim of ineffective assistance of counsel is not substantial, because it is meritless. The Court agrees. Petitioner is asserting that his trial counsel was ineffective for failing to argue that a Supreme Court case, *Missouri v. Hunter*, in which the United States Supreme Court found that Missouri's armed criminal action law did not violate the Double

Jeopardy clause, was unconstitutional and wrongly decided. It is well established that "counsel's failure to advance a meritless argument cannot constitute ineffective assistance." *Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir.1994) (per curiam). Petitioner's trial counsel was not ineffective for failing to make a challenge to existing United States Supreme Court precedent at Petitioner's trial, nor was post-conviction counsel ineffective for choosing to focus in Petitioner's motion on claims that did not rely on the premise that a United States Supreme Court decision was unconstitutional.

For all of the above reasons, Ground Four is procedurally defaulted and without merit, and it will be denied.

### iii. Grounds Five Through Seven: Procedurally Defaulted Claims of Ineffective Assistance of Direct Appeal Counsel

In Grounds Five, Six, and Seven, Petitioner asserts various claims of ineffective assistance of direct appeal counsel. As Respondent argues, and as Petitioner acknowledges, these claims are procedurally defaulted, because Petitioner failed to raise them in state court. Pet'n, Doc. 1, at 6; Resp., Doc. 15, at 9-17. Under Missouri law, claims of ineffective assistance of direct appeal counsel must be raised in a motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15. S*ee* Mo. Sup. Ct. Rule 29.15(a). Petitioner did not raise any claims of ineffective assistance of direct appeal counsel in his amended motion for post-conviction relief. Resp't Ex. F, at 20-37. Thus, these claims are defaulted. *See Interiano*, 471 F.3d at 856. This Court cannot reach the merits of those claims unless Petitioner can either establish cause for the default and actual prejudice, or that establish that the default will result in a fundamental miscarriage of justice.

Petitioner does not argue that the fundamental miscarriage of justice exception is satisfied. However, in his Petition, Petitioner argues that "cause exists because the appointed counsels failed to raise the claims set forth in Ground 4-7, that is with merit and constitute constitutionally

ineffective assistance of counsel." Pet'n, Doc. 1, at 7. Respondent reasonably construed this as an argument that cause for the procedural default exists because Petitioner's post-conviction counsel was ineffective for failing to raise these claims in the post-conviction proceedings. However, as Respondent argues, that argument fails. The Supreme Court has expressly held that although ineffective assistance of post-conviction counsel may excuse default of a claim of an ineffective assistance of *trial* counsel under some circumstances, ineffective assistance of post-conviction counsel may not excuse default of a claim of ineffective assistance of *appellate* counsel. The Supreme Court stated:

> It has long been the rule that attorney error is an objective external factor providing cause for excusing a procedural default only if that error amounted to a deprivation of the constitutional right to counsel. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). An error amounting to constitutionally ineffective assistance is "imputed to the State" and is therefore external to the prisoner. *Murray, supra*, at 488. Attorney error that does not violate the Constitution, however, is attributed to the prisoner "under well-settled principles of agency law." *Coleman, supra*, at 754. It follows, then, that in proceedings for which the Constitution does not guarantee the assistance of counsel at all, attorney error cannot provide cause to excuse a default. Thus, in *Coleman*, this Court held that attorney error committed in the course of state postconviction proceedings—for which the Constitution does not guarantee the right to counsel, see *Murray v. Giarratano*, 492 U.S. 1 (1989) (plurality opinion)—cannot supply cause to excuse a procedural default that occurs in those proceedings. 501 U.S., at 755.
>
> In *Martinez*, this Court announced a narrow, "equitable . . . qualification" of the rule in *Coleman* that applies where state law requires prisoners to raise claims of ineffective assistance of trial counsel "in an initial-review collateral proceeding," rather than on direct appeal. *Martinez*, 566 U.S., at 16, 17. It held that, in those situations, "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if" the default results from the ineffective assistance of the prisoner's counsel in the collateral proceeding. *Id.*, at 17. In *Trevino*, the Court clarified that this exception applies both where state law explicitly prohibits prisoners from bringing claims of ineffective assistance of trial counsel on direct appeal and where the State's "procedural framework, by reason of its design and operation, makes it unlikely in a typical case that a defendant will have a meaningful opportunity to raise" that claim on direct appeal. 569 U.S., at – ——, 133 S.Ct., at 1921.
>
> Petitioner asks us to extend *Martinez* to allow a federal court to hear a substantial, but procedurally defaulted, claim of ineffective assistance of appellate

counsel when a prisoner's state postconviction counsel provides ineffective assistance by failing to raise that claim. We decline to do so.

*Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017).

In his Traverse, Petitioner argues that Respondent has mischaracterized his argument, that he has not claimed that his post-conviction relief counsel was ineffective, that he is not relying on *Martinez v. Ryan*, and that he is, instead, relying on *Murray v. Carrier*, 477 U.S. 478, 488 (1986), *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), and *Banks v. Reynolds*, 54 F.3d 1508, 1514-15 (10th Cir. 1995). Traverse, Doc. 20, at 8, 10, 12. However, after review of the Traverse, the Court cannot find any argument Petitioner has made for excusing the procedural default that is not precluded by the Supreme Court's decision in *Davila*. The procedural default of Petitioner's ineffective assistance of direct appeal counsel claims occurred when his post-conviction relief counsel failed to raise any claims of direct appeal counsel in the motion for post-conviction relief. The only possible reason Petitioner argues to excuse that failure is ineffective assistance of counsel, and the only possible counsel whose ineffectiveness could have constituted cause for the default is that of his postconviction counsel. Petitioner does not explain how *Murray*, *Coleman*, or *Banks* might apply to these claims, nor is it apparent to the Court. Thus, the Court concludes that Petitioner has not shown cause for the procedural default, and Grounds Five through Seven must be denied.

**IV.    CONCLUSION**

For all of the above reasons, Petitioner is not entitled to federal habeas relief. Under 28 U.S.C. § 2253, an appeal may not be taken to the court of appeals from the final order in a 28 U.S.C. § 2254 proceeding unless a circuit judge or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). To grant such a certificate, the judge must find that the Petitioner "has made a substantial showing of the denial of a constitutional right." § 2253(c)(2);

*Tiedman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citation omitted). The Court finds that Petitioner has not made a substantial showing of the denial of a constitutional right, so the Court will not issue a certificate of appealability. Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Dale G. Cross's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DENIED.**

**IT IS FURTHER ORDERED** that this case is **DISMISSED.**

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue because Petitioner has failed to make a substantial showing that he has been denied a constitutional right. 28 U.S.C. § 2253.

_____

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 25th day of March, 2020.